UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

```
MATTHEW McDONALD, et al.,        .     Civil Action No. 18cv697
                                 .
              Plaintiffs,         .
                                 .
    vs.                          .     Alexandria, Virginia
                                 .     September 7, 2018
EDWARD G. ROBINSON, et al.,      .     10:44 a.m.
                                 .
              Defendants.         .
                                 .
.  .  .  .  .  .  .  .  .  .  .  .
```

TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

<u>APPEARANCES</u>:

FOR THE PLAINTIFFS:              CATHY A. HINGER, ESQ.
                                 Womble Bond Dickinson (US) LLP
                                 1200 - 19th Street, N.W.
                                 Suite 500
                                 Washington, D.C. 20036


FOR EDWARD G. ROBINSON AND       Richard C. Baker, ESQ.
   EDWARD G. ROBINSON III        Baker Simmons
   CONSULTING, LLC:              2120 L Street, N.W., Suite 305
                                 Washington, D.C. 20037


FOR CARLA DeSILVA McPHUN         LAURA GOLDEN LIFF, ESQ.
   AND CADEM CAPITAL GROUP:       MICHAEL B. BROWN, ESQ.
                                 Miles & Stockbridge, PC
                                 1751 Pinnacle Drive, Suite 1500
                                 Tysons Corner, VA 22102


<u>ALSO PRESENT</u>:                  DENNIS McDONALD
                                 MATTHEW McDONALD


(Pages 1 - 11)


COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

2

1    OFFICIAL COURT REPORTER:        ANNELIESE J. THOMSON, RDR, CRR
                                     U.S. District Court, Third Floor
2                                    401 Courthouse Square
                                     Alexandria, VA 22314
3                                    (703)299-8595

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                      P R O C E E D I N G S
2             THE CLERK:  Civil Action 18-697, Matthew McDonald, et
3    al. v. Edward G. Robinson, et al.  Would counsel please note
4    their appearances for the record.
5             THE COURT:  Mr. Baker, you're here for --
6             MR. BAKER:  Yes.  Good morning, Your Honor.
7             THE COURT:  You're here for the, I'm going to call
8    them the Robinson defendants, all right?
9             MR. BAKER:  Yes.
10            THE COURT:  The individual and the corporation.
11            MR. BAKER:  Yes, Your Honor.  Richard C. Baker on
12   behalf of the Robinson defendants.  May it please the Court.
13            THE COURT:  Yes, sir.
14            MS. HINGER:  Your Honor, Cathy Hinger from Womble
15   Bond Dickinson, for the plaintiffs, and I'm joined today by my
16   clients, Dennis McDonald and Matthew McDonald, who are members
17   of McDHoldings.
18            THE COURT:  All right, good morning.
19            MS. LIFF:  Good morning, Your Honor.  Laura Liff.
20   I'm here on behalf of Carla McPhun and Cadem Capital Group.
21   With me here today is Michael Brown, and he's going to be
22   handling the argument.
23            THE COURT:  All right.  And my understanding is that
24   the other defendant, Christian D'Andrade and Choice Management,
25   are in default, correct?  They've been served, but they've not
```

4

1    responded.

2              MS. HINGER:  Correct, Your Honor.

3              THE COURT:  And there's no secret, you understand

4    that there's a guilty plea scheduled for this individual on my

5    docket.

6              MS. HINGER:  For D'Andrade?

7              THE COURT:  I believe so, yes.

8              MS. HINGER:  I just learned that this week, either

9    the 17th or the 19th of this month.

10             THE COURT:  Right.  And there's also a guilty plea

11   scheduled for McPhun.  That's coming down the pike.  Are you

12   representing her for that, too?

13             MS. LIFF:  No, Your Honor.

14             THE COURT:  All right.  And, Mr. Baker, there's a

15   different -- is there another Robinson involved in this case?

16             MR. BAKER:  No, Your Honor.

17             THE COURT:  No, all right.  Your client is not facing

18   criminal charges, or is he?

19             MR. BAKER:  That is correct.  He is not.

20             THE COURT:  All right, okay.

21             Well, as you know -- and the United States, is there

22   anyone here from the United States?

23                          (No response.)

24             THE COURT:  We allowed them to intervene.  You're all

25   aware of that, correct?  So that's going to be a problem in

1   terms of the discovery at this point, but we'll face that down

2   the road.

3          So we have these three motions to dismiss for lack of

4   personal jurisdiction or failure to state a claim, but, you

5   know, this is a RICO case, a civil RICO case, and with civil

6   RICO cases, there's a much broader approach to personal

7   jurisdiction.  I really don't think there's any merit to any of

8   these three motions, and I think the response of the plaintiffs

9   has adequately shown that at least at this point, this case

10  involves wire fraud, it involves mail fraud, and it involves

11  all types of fraud.  I'm not at all convinced that the RICO

12  count would not be successful down the road.

13         I'll hear any argument any of you want to make, but,

14  I mean, at this point, certainly the victims have had enough

15  connection to the commonwealth.  The one entity is in Virginia.

16  There are banking and other transactions that occur in

17  Virginia.  That's enough of a hook in a RICO case to allow for

18  personal jurisdiction.

19         So I don't think there's any issue that this case is

20  appropriately in this district and that the defendants have

21  been -- I'm sorry, that the complaint adequately pleads the

22  necessary elements of the offense, but I'll hear any brief

23  response counsel want to make to that.

24         MR. BROWN:  Your Honor, we would make a couple of

25  points with respect to the 12(b)(6) argument.  First of all,

6

1    that is that the PSLRA's RICO amendment would bar any action

2    that would be actionable as securities fraud.

3          THE COURT:  Yeah, but I'm not at all convinced that

4    these are securities.  I mean -- and I think that's something

5    down the road, if there is discovery in this case, you might be

6    able to come back and make that argument to me, but as you

7    know, there were various things that the defendants are alleged

8    to have been selling to the plaintiffs.  There were real

9    estate, pieces of property.  Then there were just outright

10   loans, as I understand it.

11         So there are different types of what I'll call

12   commodities or things that were being exchanged, and I'm not

13   sure they would all necessarily as a matter of law qualify as

14   securities.

15         MR. BROWN:  I appreciate the Court's view on that.  I

16   would look to the verified complaint and the allegations there,

17   and that's a basis for our motion.  And in the verified

18   complaint, the plaintiffs say repeatedly that each of the

19   transactions, quote, was an investment contract because

20   plaintiffs expected their profits to come solely from the

21   efforts of others, the definition of a security, and they also

22   in the verified complaint stated that each of the transactions

23   was a security, and that's at six different places.

24         Based on that, taking the allegations as true at this

25   stage, we submit -- and recognizing also that the plaintiffs

1   have pleaded both state and federal securities violations, we

2   submit that there is an inconsistency there.

3          And we also would suggest that this is properly

4   resolved at the motion to dismiss stage.  The three principal

5   cases on which we rely -- the *MLSMK* case out of the Second

6   Circuit, the *Bald Eagle* case out of the Third Circuit, and the

7   *Capital Investment Funding* case out of South Carolina -- all

8   were resolved at the motion to dismiss stage.

9          So in light of that, we do think it's appropriately

10  dealt with at this stage.

11         THE COURT:  All right.  I'm still going to deny the

12  motion, without prejudice to it being renewed when we see a

13  fuller record, all right?

14         MR. BROWN:  Would the Court entertain argument as to

15  the second argument, which is the pattern of racketeering

16  activity?

17         THE COURT:  No.  I think it's clearly pled, all

18  right?  But thank you.

19         MR. BROWN:  I understand.

20         THE COURT:  So -- and I don't know what's going to

21  happen.  Have you talked, any of you, with the U.S. Attorney's

22  Office as to how they're going to get involved in the discovery

23  in this case?

24         MS. HINGER:  Yes, Your Honor.

25         THE COURT:  All right.  Why don't you tell me what

8

1    your understanding is just so I can see what's coming down the

2    pike, all right?

3              MS. HINGER:  Thank you, Your Honor.  My

4    understanding, I learned from Grace Hill on Wednesday that they

5    would be filing the motion to intervene.  I have concerns

6    because we were on a tight schedule.  We were before Judge

7    Buchanan last month and entered our discovery schedule, so

8    we're launching discovery.  We've served some discovery.  I've

9    got more going out today to keep with that schedule.

10             My concern is that Mr. McDonald and McDHoldings are

11   not going to be included, is my understanding, as victims in

12   the plea that's being entered by the defendants in this case,

13   and Keisha Williams is not a defendant in this case, so that

14   makes us a little bit unlike any of the cases that she's

15   relying on for her intervention.

16             I did see that you referred her motion to stay to

17   Judge Buchanan, and my hope is that what we can do is reach a

18   stipulated agreement that any testimonial discovery from

19   Ms. McPhun or Mr. D'Andrade can be put off until after the

20   criminal trial.  I think as a practical matter, that's what's

21   going to happen anyway, because I'm in document collection mode

22   right now, but the predominant part of my discovery is going to

23   be seeking records from banks and third parties to trace what

24   happened to my clients' money when they took it, and that's

25   uniquely known to Mr. Robinson, the banks that are involved and

9

1    this other third-party AmeriFunding, so there's a lot of

2    discovery that I can conduct that will not impact, I don't

3    think, in any way the Keisha Williams trial.

4         So my hope is we can negotiate a resolution --

5         THE COURT:  All right.

6         MS. HINGER:  -- that works for everyone and so we

7    won't have to have a hearing on the 21st in front of Judge

8    Buchanan, or I can present an agreed stipulation, but Ms. Hill

9    felt strongly on Wednesday that she had to file her motion, and

10   we really didn't have time to get through that.

11        She hadn't seen my discovery yet, so I said:  Let me

12   get it out, and I did share with her the discovery.

13        THE COURT:  All right.  But it's your understanding

14   that the McDonalds at this point are not included among the

15   potential victims in this case?

16        MS. HINGER:  I think that the U.S. Attorney's Office

17   believes that they were part of the scheme, but they have not

18   been included as victims in the, the conduct that is being

19   indicted, nor are they going to be identified as victims in the

20   pleas, as I understand it.

21        THE COURT:  I'm sorry, when you say "part of the

22   scheme," you mean as offenders or as victims?

23        MS. HINGER:  As victims.

24        THE COURT:  Oh, all right.  Yeah.

25        MS. HINGER:  I think the case got indicted with a

1   number of victims, and maybe not all of the victims -- offenses

2   against all of the victims were included because it's so many

3   and they don't need that many.  I don't know why they're not

4   including my clients in it, but the fact that they intervened

5   in this and the fact that I got the call from Ms. Hill

6   reflects to me that they do understand that they were part of

7   the same -- victims in the same scheme.

8           THE COURT:  But you do understand that -- my

9   understanding is that in any fraud case, anyone who can show

10  that they've been the victim of the fraud has a right to apply

11  as a victim in terms of the restitution mechanism that the U.S.

12  Attorney's Office has.

13          MS. HINGER:  I expect that we will be doing that,

14  yes.

15          THE COURT:  Okay.

16          MS. HINGER:  We just learned about this on Wednesday.

17          THE COURT:  All right.

18          MS. HINGER:  We've just started discussing it with

19  them.  So that will be unfolding.

20          THE COURT:  All right.  Well, we'll have to see how

21  it all plays out, but again, civil litigation is expensive, and

22  to the extent that some issues really may not be defensible, it

23  may make sense to try to work out things as quickly as you can,

24  all right?

25          MS. HINGER:  Certainly, Your Honor.

1    THE COURT:  All right.  So I've ruled on this case,

2  and that concludes the docket for today.  We'll adjourn court.

3    MR. BROWN:  Your Honor?

4    THE COURT:  Yes.

5    MR. BROWN:  We would request a stay with respect to

6  our duty to answer the complaint.  As the Court is aware, based

7  on the intervention of the United States, based on Ms. McPhun's

8  forthcoming plea and the Williams trial scheduled to begin in

9  October and conclude a few days later in October, we would

10  request and move for a stay of our duty to respond to the

11  complaint.

12    THE COURT:  No.  No, we need to keep this case

13  moving, and it can't be that complicated to file an answer.  A

14  lot of answers are just deny, deny, deny, deny, deny.  So no,

15  denied.

16    MR. BROWN:  Understood.

17    THE COURT:  All right.  Adjourn court.

18                (Which were all the proceedings

19                 had at this time.)

20

21              CERTIFICATE OF THE REPORTER

22    I certify that the foregoing is a correct transcript of

23  the record of proceedings in the above-entitled matter.

24

25                                _____/s/_____
                                 Anneliese J. Thomson