IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MATTHEW MCDONALD, et al., )
)
    Plaintiffs, )
)
v. ) 1:18-cv-697 (LMB/TCB)
)
EDWARD G. ROBINSON, III, et al., )
)
    Defendants. )

## MEMORANDUM OPINION

On September 4, 2020, the assigned magistrate judge issued an extensive Report and Recommendation ("Report") recommending that a default judgment of $4,165,418.40 plus $469,254.04 in attorneys' fees and costs be entered in favor of plaintiff McDHoldings[1] ("plaintiff" or "McDHoldings") jointly and severally against defendants Carla Desilva McPhun ("McPhun"), Cadem Capital Group ("Cadem"), Choice Management, LLC ("Choice Management"), and Christian E. D'Andrade ("D'Andrade") for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c) and (d) ("RICO"). The Report advised the parties that any objection to its findings of fact or recommendations had to be filed within 14 days and that failure to file timely objections waived appellate review of any judgment based on the Report. On September 18, 2020, McPhun and Cadem (collectively, the "McPhun defendants") filed an objection [Dkt. No. 264]. On September 22, 2020, D'Andrade filed an

---

[1] Plaintiffs Matthew McDonald and McDHoldings, LLC explain in their Supplemental Memorandum in Support of the Omnibus Motion [Dkt. No. 204] that McDonald "was named as an individual plaintiff in the event that any Defendant contested liability as to [McDHoldings]." Because the remaining Defendants are in default, plaintiffs now request that the Court enter judgment only in favor of McDHoldings, and not McDonald, "because it is the only entity that paid the funds to Defendants." [Dkt. 204 at 2 n.2].

objection [Dkt. No. 265]. Plaintiffs Matthew McDonald and McDHoldings, LLC (collectively, "plaintiffs") have filed responses to both objections [Dkt. Nos. 266, 267]. Finding that oral argument would not assist the decisional process, defendants' objections will be decided on the papers submitted.

## I. BACKGROUND

### A. **Factual Background**

According to the complaint, the circumstances underlying this litigation arose when Edward G. Robinson, III ("Robinson"), who was voluntarily dismissed from this litigation along with his consulting firm, Edward G. Robinson III Consulting, LLC ("Robinson Consulting"), [Dkt. No. 179], hired McDonald's architectural firm McDStudio, LLC, to provide architectural services. [Dkt. No. 1] ¶¶ 14-16. Their continued professional relationship led McDonald to invest in McPhun's business, as Robinson introduced McDonald to McPhun as a real estate investor who "purchase[d] houses in bulk off foreclosure lists" and needed "bridge loan financing" to flip the properties for a profit. Id. ¶¶ 28, 37. Upon receiving a successful return on his first investment—outlined in the complaint as "Investment 1"—McDonald formed plaintiff McDHoldings to participate in additional investments presented by Robinson and McPhun. Id. ¶¶ 27-35. Plaintiff then helped fund a second successful investment—outlined in the complaint as "Investment 2." Id. ¶¶ 36-43. After these two initial successes, McDHoldings continued to invest with Robinson and McPhun, resulting in the following investments, all of which turned out to be fraudulent:

| Transaction | Date of Investment | Principal Investment | Payee of Fraudulent Investment |
|---|---|---|---|
| Devilwood | 11/22/2016 | $150,000 | Choice Management |
| Investment 3 | 02/16/2017 | $35,000 | Robinson Consulting |

| | | | |
|---|---|---|---|
| Investment 7 | 04/20/2017 | $220,000 | McPhun |
| Investment 8 | 05/17/2017 | $10,000 | D'Andrade |
| Investment 9 | 06/05/2017 | $73,000 | D'Andrade |
| Investment 10 | 07/07/2017 | $180,000 | Robinson Consulting |
| Investment 11 | 08/07/2017 | $160,000 | McPhun |
| Investment 12 | 12/27/2017 | $56,000 | Teresa Bunnag |
| **Total Investment:** | | **$884,000** | |

[Dkt. No. 204] at 10; [Dkt. No. 185-4] at Ex. 1. In addition to the unpaid principal amounts listed above, McDHoldings alleges that it was damaged in the amounts of $392,500 for unpaid contractually guaranteed returns on these investments, $40,775 for unpaid contractually guaranteed penalties, and $48,293.65 in interest, totaling $1,365,568.65 in compensatory damages.[2]

Plaintiffs attached multiple documents to their complaint, as well as to the Memorandum in Support of Plaintiffs' Omnibus Motion for Entry of Default Judgments Against D'Andrade and McPhun Defendants [Dkt. No. 185] and Supplemental Memorandum in Support of Plaintiffs' Motion for Entry Of Default Judgments Against D'Andrade and McPhun Defendants [Dkt. No. 204], showing the contracts and payments for the investments described above. For example, Dkt. No. 1-4 is a letter detailing the terms of the Devilwood investment, and Dkt. No. 185-4 Exhibit 2 is a bank statement for McDHoldings showing a withdrawal of $9,000 on

---

[2] On May 30, 2019, plaintiff filed updated attorneys' fees and costs, stating that they had incurred an additional $183,512.18 in attorneys' fees and costs since December 2018. [Dkt. No. 234]. On September 19, 2019, plaintiffs filed updated interest calculations, which brought the total to $1,388,472.80 in compensatory damages and $469,254.04 in attorneys' fees and costs expended on this litigation. [Dkt. No. 248].

3

November 22, 2016 and remittance of $141,000 to "Choice Management" on November 23, 2016. Both exhibits corroborate plaintiff's claim that McDHoldings invested $150,000 in the Devilwood project.

### B. Procedural Background

Plaintiffs' twelve-count Verified Complaint [Dkt. No. 1] alleges violations of 18 U.S.C. §§ 1962(b), (c), and (d) of the Racketeer Influenced and Corrupt Organizations ("RICO") Act against all defendants (Counts I-III); violations of the Virginia Business Conspiracy Statute (Va. Code § 18.2-500) against all defendants (Count IV); common law conspiracy against all defendants (Count V); common law fraud against McPhun and D'Andrade (Count VI); securities fraud in violation of the Securities Exchange Act of 1934 and Exchange Act Rule 10b-5 against McPhun and D'Andrade (Count VII); securities fraud in violation of Va. Code §§ 13.1-522, et seq. against McPhun and D'Andrade (Count VIII); breach of contract against all defendants (Count IX); unjust enrichment against McPhun (Count X); conversion against McPhun, Choice Management, and D'Andrade (Count XI); and punitive damages for all defendants (Count XII). [Dkt. No. 1]. The Report correctly found that full relief could be granted under Counts II and III and accordingly only addressed those counts. Plaintiffs have not objected to the decision to consider only those two counts. Count II alleges that defendants committed a substantive (as opposed to conspiratorial) RICO violation pursuant to 18 U.S.C. § 1962(c), and Count III alleges that defendants conspired to commit a RICO violation under 18 U.S.C. § 1962(d).

This litigation has a lengthy procedural history, which is detailed in the Report and much of which has already been outlined in this Court's January 10, 2019 Memorandum Opinion [Dkt.

No. 201], which is incorporated in this Opinion.[3] In sum, this civil action grows out of a complex criminal conspiracy in which Keisha Williams, who is not a party to this action, fraudulently induced investments totaling over $5 million from various victims and used the money to fund her lavish lifestyle, rather than investing it as promised and paying back the investors. See United States v. Williams, No. 1:18-cr-160-LMB (E.D. Va.). As part of that conspiracy, the United States also prosecuted McPhun and D'Andrade, who were both victims and co-conspirators of Williams. See United States v. McPhun, No. 1:18-cr-333-LMB-1 (E.D. Va); United States v. D'Andrade, No. 1:18-cr-332-LMB-1 (E.D. Va.).

D'Andrade was charged with and pleaded guilty to wire fraud under 18 U.S.C. § 1343. United States v. D'Andrade, No. 1:18-cr-332-LMB-1 (E.D. Va.). As part of his guilty plea, D'Andrade admitted that "having devised a scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses and representations from certain individuals in order to provide [sic] to Keisha Williams, [he] knowingly caused to be transmitted by means of wire communications in interstate commerce writing, signs, and signals for the purpose of executing the scheme and artifice to defraud." Id. [Dkt. No. 3]. D'Andrade also admitted that as part of the scheme, he "caused others to send Williams money directly, and through him, in amounts totaling almost $4 million." Id. [Dkt. No. 7 ¶ 9]. He was sentenced to three years of supervised probation with conditions that included a requirement he make a good faith effort to satisfy a $2,281,239.00 restitution obligation to 32 victims, which included paying $68,000 to plaintiff McDHoldings. Id.

---

[3] In the January 10, 2019 Opinion, the Court adopted the magistrate judge's Report and Recommendation recommending an entry of default against McPhun and Cadem as a discovery sanction. [Dkt. No. 201].

McPhun was charged with, and also pleaded guilty to, wire fraud under 18 U.S.C. § 1343. United States v. McPhun, No. 1:18-cr-333-LMB-1 (E.D. Va). As part of McPhun's guilty plea, she admitted that (1) she "devised a scheme and artifice to defraud," and that she "obtain[ed] money by means of materially false and fraudulent pretenses and representations . . . in order to provide money to Keisha Williams"; (2) and "[h]aving devised the scheme, [she] knowingly caused to be transmitted by means of wire communications in interstate commerce writings, signs, and signals for the purpose of executing the scheme and artifice to defraud." Id. [Dkt. No. 6]. In the Statement of Facts supporting McPhun's plea agreement, she agreed that, in furtherance of the scheme to defraud, she "obtained approximately $1 million for D'Andrade and Williams from others who were willing to loan money." Id. [Dkt. No. 9 ¶ 4]. She was sentenced to two years of supervised probation with conditions, including payment of $433,000 restitution, to be paid to five victims, none of whom included plaintiffs. Id.

On February 1, 2019, plaintiffs filed a Notice of Related Bankruptcy Cases and Automatic Stay, informing the Court that McPhun and D'Andrade filed bankruptcy cases in the United States Bankruptcy Courts for the District of Maryland and the Northern District of California, respectively. [Dkt. No. 205]. On March 3, 2019, plaintiffs filed a notice explaining that they had requested, and been granted, relief from the automatic stay in McPhun's Maryland bankruptcy case, and that the California bankruptcy court had dismissed D'Andrade's case. [Dkt. No. 212]. D'Andrade then filed with this Court an order from the California bankruptcy court reinstating his Chapter 7 bankruptcy case, which resulted in a further stay of these proceedings.

[Dkt. No. 222]. All stays having been lifted, this civil action may now proceed. [Dkt. Nos. 224, 225].[4]

The four remaining defendants in this civil action are in default for different reasons. Choice Management and D'Andrade failed to respond timely to the Verified Complaint, and McPhun and Cadem are in default as a discovery sanction. In September and October of 2018, plaintiffs requested that the Clerk enter a default as to Choice Management and D'Andrade under Rule 55(a), and the Clerk entered the defaults. [Dkt. Nos. 60-61, 85, 88, 91-92].

On December 26, 2018, the magistrate judge issued the First Report and Recommendation ("First R&R") [Dkt. No. 196] in which she granted plaintiffs' Motion for Sanctions and Entry of Default against the McPhun defendants [Dkt. No. 150] based on their failure to comply with their discovery obligations and court orders. The magistrate judge also issued a Rule to Show Cause for McPhun and Cadem to show cause as to why a default judgment should not be issued against them [Dkts. No. 158-59]. The McPhun defendants' pro se[5] opposition to the Report and Rule to Show Cause was denied after this Court found that the

---

[4] Although plaintiffs complain that "the Report and Recommendation has been ripe for consideration by the District Court judge for almost nine months without a ruling," [Dkt. No. 268] at 1, plaintiffs were remiss in not bringing to the Court's attention that McPhun filed another bankruptcy proceeding on January 21, 2021, which should have stayed this civil action. In re McPhun, Case No. 21-10424-TJC (E.D. Va. Bankr. filed Jan. 22, 2021). On February 10, 2021, plaintiffs filed a Motion for Relief from the Automatic Stay [Dkt. No. 16], which was eventually dismissed as moot on May 4, 2021, [Dkt. No. 66], after the bankruptcy judge granted McPhun's Motion to Dismiss and enjoined her from filing another bankruptcy petition for two years. [Dkt. No. 61].

[5] After McPhun's counsel withdrew earlier in the litigation, McPhun proceeded pro se. Additionally, the Court allowed McPhun to represent Cadem pro se as she is the sole owner. See Dynamis, Inc. v. Dynamis.com, 780 F. Supp. 2d 465, 469 (E.D. Va. 2011) (citing RZS Holdings AVV v. PDVSA Petroleo S.A., 506 F.3d 350, 354 (4th Cir. 2007) ("[S]ole proprietors are entitled to represent their sole proprietorship pro se in litigation."). In early 2019, Jonathan Rhayader Oates and William Day entered appearances on behalf of McPhun, and they currently represent the McPhun defendants.

7

defendants' pro se status did not "rescue them from the consequences of their noncompliance" and "adopt[ed] in full the magistrate judge's conclusion that an entry of default is the appropriate sanction given the McPhun Defendants' repeated and flagrant noncompliance with the Federal Rules and with the Court's orders." [Dkt. No. 201] at 8. The Clerk entered a default against the McPhun defendants. [Dkt. No. 203].

Although plaintiffs had previously filed an Omnibus Motion for Entry of Default Judgments Against D'Andrade and McPhun Defendants ("Omnibus Motion") [Dkt. No. 184], the Court required plaintiffs to file a supplemental brief in support of their request for a default judgment. [Dkt. 202]. Plaintiffs filed the supplemental memorandum, [Dkt. No. 204], to which the McPhun defendants and D'Andrade responded. [Dkt. Nos. 255, 257–259]. The Report at issue was entered after the magistrate judge considered these pleadings.

## II. DISCUSSION

### A. Standard of Review

When a defendant has defaulted, the well-pleaded allegations of facts set forth in the complaint are deemed admitted. JTH Tax, Inc. v. Grabert, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (citing Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001)). Before granting judgment by default, the Court must "determine whether the well-pleaded allegations ... support the relief sought in this action." Ryan, 253 F.3d at 780.

When a party objects to a magistrate judge's Report and Recommendation, the "district court [] review[s] only those portions of the report or specified proposed findings or recommendations to which objection is made." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (emphasis in original) (quoting 28 U.S.C. § 636(b)(1)). The statute's intent is to "focus on specific issues, not the report as a whole." Id. "[O]bjections must be specific and particularized in order to direct the attention of the district court to 'only those issues that remain

in dispute after the magistrate judge has made findings and recommendations.'" United States v. Kotzev, No. 1:18-cv-1409, 2020 WL 1217153, at *3 (E.D. Va. Mar. 11, 2020) (quoting Midgette, 478 F.3d at 621). "[T]he Fourth Circuit has made clear that '[a] general objection to the entirety of the magistrate judge's report is tantamount to a failure to object.'" Id. (alteration in original) (quoting Tyler v. Wates, 84 F. App'x 289, 290 (4th Cir. 2003) (unpublished decision)). If no specific and particularized objection is made regarding a portion of the Report, "a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" See Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

### B. Analysis

The Report found that the Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. §§ 1331 and 1367(a) because counts I, II, III, and VII arise under federal law, and the Virginia state law claims are so closely related with the federal claims that they constitute the same case or controversy. The Report also found that the Court has specific personal jurisdiction over defendants because they directed tortious conduct toward plaintiffs in Virginia, and that venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial number of events giving rise to this lawsuit occurred in Virginia. Furthermore, the RICO statute allows a plaintiff to bring a civil action against a defendant in any federal judicial district "in which [the defendant] resides, is found, has an agent, or transacts his affairs," 18 U.S.C. § 1965(a). Defendants transacted their affairs in the Eastern District of Virginia by, among other acts, soliciting fraudulent investments from plaintiffs. Lastly, the Report concluded that all defendants were properly served. Specifically, plaintiffs' private process server served D'Andrade by posting the complaint and summons on his front door and mailing him a copy of

the documents via the U.S. Postal Service pursuant to Fed. R. Civ. P. 4(e)(1) and Virginia Code § 8.01-296. Plaintiffs' private process server personally served McPhun, Cadem, and Choice Management pursuant to Rules 4(e)(2)(A) and 4(h)(1(A).

The Report found that plaintiffs adequately pleaded substantive RICO claims under 18 U.S.C. § 1962(c) (Count II) against all defendants, by citing facts and attaching documents establishing that defendants were engaged in a pattern of racketeering activity by using email and bank wires to take "unknowing investors' money with no intention of paying them back" for the purposes of obtaining money, in a "scheme that likely would have continued into the future and preyed on other victims, had the United States not ultimately prosecuted Williams, D'Andrade, and McPhun." [Dkt. No. 263] at 25–28. Additionally, the Report found that plaintiffs established that an enterprise executed the pattern of racketeering because "[d]efendants functioned as a unit," by "McPhun us[ing] her two companies to execute the scheme, and . . . working with D'Andrade to take advantage of investors." Id. at 28–29. Additionally, the Report found that plaintiffs adequately pleaded a RICO conspiracy pursuant to § 1962(d) (Count III) because they pleaded facts showing that the defendants "agreed to pursue the same criminal objective," and supported that claim with allegations evincing "many instances where the Defendants collectively had no intention of repaying Plaintiffs' loans/investments." [Dkt. No. 263] at 30–31 (citing at least five instances described in the complaint).

1. D'Andrade's Objections

Acting pro se, D'Andrade raises essentially three objections to the Report: (1) improper service of process, see [Dkt. No. 265] at 2; (2) the U.S. Attorney's Office allegedly absolved D'Andrade of any civil liability by declining to prosecute him for defrauding plaintiffs, see id.; and (3) "[t]he complaint fails to allege racketeering activity by Defendant and fails to allege a pattern of such activity," id. at 3.

To the extent D'Andrade raises the issue of sufficiency of service because he claims that service was made at a property that no longer belonged to him, he did not previously raise that issue before the magistrate judge. See [Dkt. Nos. 236, 257–259]. "A magistrate judge's decision should not be disturbed on the basis of arguments not presented to [the magistrate judge]." Jesselson v. Outlet Assocs. of Williamsburg, Ltd. P'ship, 784 F. Supp. 1223, 1228 (E.D. Va. 1991). Accordingly, this argument is deemed to have been waived. Even if D'Andrade had not waived this objection, plaintiffs point out that on September 19, 2018, D'Andrade was personally served with a copy of the complaint and summons inside this courthouse after a planned court appearance. [Dkt. No. 185] at 3.[6] Accordingly, any defect in the original service of process was harmless, and this objection fails.

As to his second objection, even though the Judgment in D'Andrade's criminal case included McDHoldings among the victims to whom restitution was due, D'Andrade argues that "in the criminal case it was determined that defendant D'Andrade was not aware of the scheme to defraud Plaintiff McDonald." [Dkt. No. 265] at 1. In addressing a defendant's default, the

---

[6] On August 10, 2018, plaintiffs served D'Andrade by posting the summons, notice, and verified complaint on the front door of his Washington, DC residence and mailing a copy of the same to that residence. [Dkt. No. 34]. D'Andrade failed to respond to the complaint, and on September 6, 2018, plaintiffs filed their Motion for Entry of Default as to Christian E. D'Andrade. [Dkt. No. 60]. On September 19, 2018, when plaintiffs realized that D'Andrade would be at the Alexandria courthouse to enter a guilty plea, they had him served with a copy of the Verified Complaint, along with requests for production of documents, interrogatories, a notice of deposition, and a deposition subpoena alerting D'Andrade that his deposition was set for December 7, 2018 at 9:00 a.m. [Dkt. No. 185] ¶ 14 (citing [Dkt. Nos. 185-1, 185-2]). Defendant did not respond to the complaint within the required time. As a result, on September 28, 2018, plaintiffs filed a Supplement to Plaintiffs' Motion for Entry of Default as to Defendant Christian E. D'Andrade. [Dkt. No. 85]. On October 4, 2018, the Clerk entered a default as to D'Andrade. [Dkt. No. 92]. On October 23, 2018, D'Andrade filed a pro se Motion to Dismiss Improper Party and Motion to Dismiss for Personal Jurisdiction, which proves that he was aware of this litigation. [Dkt. No. 112].

"appropriate inquiry is whether or not the face of the pleadings supports the default judgment and causes of action therein." JTH Tax, 8 F. Supp. 3d at 736. The Report correctly concluded:

> [T]he determination of whether to award restitution in a criminal action, versus whether a plaintiff properly states a claim upon which relief can be granted in a civil dispute, is different. The Court must consider the verified facts set forth in this matter's Complaint and take those facts as true at default judgment proceedings.

[Dkt. No. 263] at 33. Accordingly, the Report held that the federal prosecutors' exercise of their discretion in the related criminal case not to seek the full amount plaintiffs claimed they were owed is irrelevant to the instant evaluation of whether to impose a default judgment.

D'Andrade's final argument that "[t]he complaint fails to allege racketeering activity by Defendant and fails to allege a pattern of such activity" fails because the Report correctly found that "[p]laintiffs have sufficiently alleged that D'Andrade committed multiple acts of wire fraud in perpetuation of this scheme"; therefore, the standard of "whether or not the face of the pleadings supports the default judgment and causes of action therein" is satisfied, and D'Andrade's objections are overruled. [Dkt. No. 263] at 32; JTH Tax, 8 F. Supp. 3d at 736.

### 2. McPhun Defendants' Objections

The McPhun defendants' main objections are that the Report "incorrectly takes judicial notice of [McPhun's guilty] plea" to support plaintiffs' claim that McPhun committed the wire fraud element of RICO, and fails to consider that by declining to prosecute McPhun for defrauding plaintiffs and refusing to enter restitution for plaintiffs in the related criminal matter, the prosecutors and this Court, respectively, absolved the McPhun defendants of any civil liability.[7] [Dkt. No. 264].

---

[7] To the extent that the McPhun defendants attempt to incorporate their entire Opposition to Motion for Default Judgment [Dkt. No. 255], the Court will only review "specific and particularized" objections raised by defendants. Kotzev, 2020 WL 1217153, at *3.

It is well established that courts may take judicial notice of related criminal matters. Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) (collecting cases) (holding that courts "may properly take judicial notice of the [defendants]' guilty pleas . . . "). The Fourth Circuit has observed that "[t]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records." Id. (quoting 21 C. Wright & K. Graham, Fed. Practice & Procedure: Evid. § 5106 at 505 (1977)).

Although the parties contest the relevance of McPhun's guilty plea, the guilty plea was not the only or even a major basis upon which the Report found that the Verified Complaint's well-pleaded allegations of fact established that the McPhun defendants committed multiple predicate acts of wire fraud. The Report specifically found that the element of the use of wires in furtherance of the scheme was satisfied because "[p]laintiffs' Verified Complaint is replete with instances where McPhun (using her companies Cadem and Choice Management) used email, telephone, and bank wires in furtherance of the scheme's fraudulent objectives." [Dkt. No. 263] at 25-26 (citing Verified Complaint [Dkt. No. 1] ¶¶ 45, 52-58, 139-41, 182-83).

The McPhun defendants also argue that the decision by the prosecutors not to prosecute McPhun for defrauding plaintiffs and the failure of the Court to award the plaintiffs restitution in the criminal matter contradict the allegations in plaintiffs' Verified Complaint. As addressed above, the Report correctly reasoned that the discretionary decision of the prosecutors and the decision of this Court not to include plaintiffs in the restitution orders issued in the related criminal cases involve considerations which differ from what must be considered in determining whether a complaint sufficiently alleges a claim upon which relief can be granted in a civil dispute. [Dkt. No. 263] at 33. The "appropriate inquiry [in evaluating a motion for default judgment] is whether or not the face of the pleadings supports the default judgment and causes of

action therein." JTH Tax, 8 F. Supp. 3d at 736. Although it is true that "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover," the magistrate judge's 38-page Report in no way assumed defendants' liability or plaintiffs' right to recover. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001) (quoting Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir.1975)). Rather, the Report carefully and thoroughly evaluated the sufficiency of plaintiffs' allegations for each element of Counts II and III. [Dkt. No. 263] at 22-36. Accordingly, the McPhun defendants' objections are overruled.

Although defendants' objections do not challenge the reasonableness of the attorneys' fees awarded in the Report, the McPhun defendants challenged plaintiffs' request for attorneys' fees in their response to plaintiffs' motion for default judgment by arguing that the fees are disproportionate for a "case that did not even get to discovery." [Dkt. No. 255-1 at 12]. Accordingly, the Court has independently assessed the reasonableness of the $469,254.04 in attorneys' fees and costs.

To calculate an award of attorneys' fees, "a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243 (4th Cir. 2009). In the Fourth Circuit, reasonableness is determined by reference to the twelve factors adopted in Barber v. Kimbrell's, Inc.:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which

the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

577 F.2d 216, 226 n.28 (4th Cir. 1978). "Although each factor is persuasive, the court need not consider each of them individually because they all are 'subsumed' into an analysis of what constitutes a reasonable rate and number of hours expended." Mulugeta v. Ademachew, No. 1:17-cv-649, 2019 WL 7945712, at *5 (E.D. Va. Nov. 6, 2019) (quoting Smith v. Loudoun Cty. Pub. Schs., No. 1:15-cv-956, 2017 WL 176510, at *2 (E.D. Va. Jan. 17, 2017)).

Considering plaintiffs' calculations, time logs, and declarations, [Dkt. Nos. 185-5, 234], the hourly rates charged by plaintiffs' counsel and staff, ranging from $140 to $550, are appropriate given the experience of plaintiffs' attorneys and staff, and the quality of their work product. Similar rates have been awarded in other cases, including to plaintiffs' counsel by a bankruptcy court in the Eastern District of Virginia in the context of a civil RICO and fraud action. In re Kang, 16-01005-BFK, Doc. No. 258 (Aug. 10, 2017). Although the McPhun defendants focused on the lack of discovery, as the Report found, this action was "heavily litigated" based on the numerous motions and extensive briefing in which the parties engaged. [Dkt. No. 263] at 35–36. Accordingly, the Report's conclusion that the attorneys' fees are "reasonable and commensurate with the amount of work and hours that plaintiffs' counsel has expended on the matter" was reasonable. [Dkt. No. 263] at 36.

III. CONCLUSION

Having fully reviewed the record—including the parties' memoranda, the magistrate judge's 38-page Report, and the defendants' objections to the Report—the defendants' objections to the Report are overruled and the Court adopts the findings of fact and conclusions of law contained in the Report as its own. For the reasons stated in the Report, plaintiffs' Omnibus Motion [Dkt. 184] will be granted in all respects, except for the request to recover

attorneys' fees connected with separate bankruptcy matters,[8] and judgment will be entered in favor of McDHoldings in the amount of $4,165,418.40,[9] along with $469,254.04 in attorneys' fees and costs against the defendants jointly and severally by an Order to be issued with this Opinion.

Entered this 15th day of July, 2021.

Alexandria, Virginia

/s/ 
Leonie M. Brinkema
United States District Judge

---

[8] The magistrate judge correctly found that although "the bankruptcy matters were related to this case because they involved McPhun and D'Andrade, . . . the matters are nonetheless separate from Plaintiffs' pursuit of a remedy under RICO and their other claims" and recommended the Court decline to award the attorneys' fees and costs ($38,782.22 for the McPhun defendants and $30,515.00 for D'Andrade) incurred by plaintiffs in McPhun and D'Andrade's bankruptcy matters.

[9] Compensatory damages in this civil action are $1,388,472.80, and plaintiff is entitled to treble damages pursuant to 18 U.S.C. § 1964(c), totaling $4,165,418.40.